| | | | |
|---|---|---|---|
| ROBERT CRAWFORD, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 1:13CV110 (TIA) |
| | ) | | |
| CAROLYN W. COLVIN, | ) | | |
| Acting Commissioner of Social Security, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") finding that Claimant Robert

Crawford was not disabled and, thus, not entitled to Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1384f.

Claimant has filed a Brief in Support of his Complaint; the Commissioner has filed a Brief

in Support of her Answer.   The parties consented to the jurisdiction of the undersigned

pursuant to 28 U.S.C. § 636(b).   For the reasons set forth below, the decision of the

Commissioner denying benefits will be affirmed.

## I.    Procedural History

Claimant, who was born on September 16, 1969, filed his application for benefits on

August 14, 2007, alleging a disability onset date of January 1, 2004, due to various

physical and mental impairments.   After Claimant's application was denied at the initial

administrative level, Claimant requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on May 20, 2009.   On July 15, 2009, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a limited range of light work, including his past job working at a service station, and was not disabled under the Act.   Claimant requested review by the Appeals Council of the Social Security Administration ("Appeals Council") and submitted additional evidence.   The Appeals Council summarily stated that the new evidence did not provide a basis for changing the ALJ's decision, and denied the request for review.   Claimant then appealed the decision to the United States District Court for the Eastern District of Missouri. (Tr. 1-3, 13-24, 43-44.)[1]

On February 2, 2012, the District Court reversed the Commissioner's decision and remanded the case to the Commissioner for further proceedings (Tr. 365), and on April 2, 2012, the Appeals Council remanded the case to the ALJ.   (Tr. 379-81.)   On June 4, 2012, following a supplemental hearing, the ALJ found that Claimant was not under a "disability" as defined in the Act.   (Tr. 715-30.)   On May 30, 2013, the Appeals Council denied Claimant's request for review.   (Tr. 322-24.)   Claimant has thus exhausted all administrative remedies and the ALJ's June 4, 2012 decision stands as the final decision of the Commissioner and the subject of this appeal pursuant to 42 U.S.C. § 1383(c)(3), which

---

[1]   Missouri is one of several test states participating in modifications to the disability determination procedures, which eliminate the reconsideration step in the administrative appeals process.   See 20 C.F.R. §§ 416.1406, 416.1466.   Claimant's appeal in this case proceeded directly from the initial denial to the ALJ level.

provides for judicial review of a "final decision" of the Commissioner.

In this appeal Claimant argues that the ALJ's decision that he was not disabled is not supported by substantial evidence on the record as a whole and that the ALJ committed reversible error by finding that Claimant can perform a wide range of sedentary work. Specifically, Claimant argues that the ALJ misapplied the Medical Vocational Guidelines and failed to analyze the demands of Claimant's past job at a service station. In addition, Claimant asserts that the ALJ's RFC assessment was flawed because he (1) improperly assessed Claimant's credibility, (2) incorrectly considered some medical evidence, (3) disregarded the opinion of Claimant's treating nurse practitioner and (4) minimized the effects of Claimant's obesity and mental impairments on his RFC.

## II. Work History Reports and Application Forms

On his Work History Report completed on September 25, 2007, Claimant indicated that he had a high school education and had worked at various low-paying jobs such as cashier, stocker, dispatcher, and dish washer for short intervals from 1994 to 2002. One of these jobs, which Claimant held from 1994 to 1995, was listed as "Cashier" at a gas station, but the description of the job included using a dolly to load stock on shelves, and lifting boxes of soda and candy to place on shelves, tasks which required frequent lifting of 25 pounds, occasional lifting of 50 pounds, and stooping three hours in an eight-hour workday. Most of Claimant's other past work had similar physical requirements. (Tr. 115-22.)

Claimant wrote in his Function Report dated October 1, 2007, that he had difficulty

3

with lifting, walking, and other physical activities, and sometimes did not feel like doing anything apart from "sitting around." (Tr.128.)   He wrote that the only medication he was taking on a regular basis was aspirin, although he was also supposed to be taking Plavix (used to prevent strokes and heart attacks), Wellbutrin (an antidepressant), and a diet pill, Claimant explained that did not have enough money to fill prescriptions for those medications.   He indicated that he could pay bills, count change, handle a savings account, and use a checkbook. He also wrote that he had no problem getting along with family, friends, or authority figures.   (Tr. 124-31.)   The record includes the notes from the agency employee who spoke to Claimant over the telephone when he filed his application. She noted that Claimant was very polite and had no problem talking, answering, understanding, or concentrating during the conversation. (Tr. 101-02.)

### III.  Medical Records

A. 2004-2008[2]

With respect to the period from 2004 through January 2008, this Court adopts the summary of Claimant's medical records set forth by the District Court in Crawford v. Colvin, No. 1:10CV166 AGF, slip op. at 3-9 (E.D. Mo. Feb. 2, 2012).

> Although Claimant alleged disability beginning January 1, 2004, SSI benefits are payable only from September 2007, the month following the month in which he filed his application. *See* 20 C.F.R. § 416.335. Prior medical records are appropriately considered for background purposes. On

---

2     Although Plaintiff alleged disability beginning January 1, 2004, SSI benefits are payable only from September 2007, the month following the month in which he filed his application.   *See* 20 C.F.R. § 416.335.   Prior medical records are appropriately consideredfor background purposes.

September 11, 2004, Claimant was admitted to the hospital with pneumonia. His diagnosis included hypertension, morbid obesity, unsteady gait, and hyponatremia, with no evidence of deep venous thrombosis. (Tr. 159-62.)

On May 17, 2007, Claimant presented to a medical center for a psychological evaluation to help "get off street drugs." He was in no pain, ambulated independently, and was admitted for treatment for cocaine abuse. Claimant's Global Assessment of Functioning ("GAF") [3] was 45 on admission and 65 upon release on May 19, 2007. (Tr. 185-89.) On July 23, 2007, state consultant Price Gholson, Psy.D., examined Claimant and opined that he had depressive disorder and social phobia, with a GAF of 60. In check-box format, Dr. Gholson indicated both that Claimant did not have a mental and/or physical disability which prevented him from working, and also that the duration of Claimant's disability/incapacity was expected to last four to six months. (Tr. 208-09.)

On July 23, 2007, state consultant Benjamin Mozle, M.D., conducted a physical examination of Claimant. Dr. Mozle's notes are somewhat illegible, but indicate that Claimant was morbidly obese at 6' 4" and 422 pounds, had dyspnea upon walking 50 yards, severe peripheral vascular disease, metabolic syndrome, varicose veins, questionable obstructive sleep apnea, with normal pulmonary function, and no limitations in the ability to walk, stand, stoop, and grasp. In check-box format, Dr. Mozle opined that Claimant was permanently disabled. (Tr. 223-24.)

On October 12, 2007, James Spence, Ph.D., completed a Psychiatric Review Technique form, stating that Claimant had depressive disorder that was medically determinable and that resulted in no more than mild functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Dr. Spence opined that Claimant's mental impairment did not significantly interfere with work-related functions, and was thus "non-severe." (Tr. 227-37.)

On December 12, 2007, Claimant was treated at a health clinic for complaints of shortness of breath and chest pain. He was diagnosed with

---

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate "[s]ome impairment" in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment.

obstructive sleep apnea, [chronic obstructive pulmonazry disease], "COPD", pre-diabetes, and coronary artery disease. (Tr. 243.) Claimant continued to be treated at the clinic for wheezing, lower extremity edema, varicose veins, obstructive sleep apnea, chronic obstructive pulmonary disease, hypertension, morbid obesity, and peripheral venous insufficiency. He was assessed with anxiety and depression. (Tr. 255-301.)

On January 16, 2008, a sleep study showed severe obstructive sleep apnea. CPAP titration was recommended as well as evaluation of sleep hygiene and medications, weight loss, and smoking cessation. (Tr. 246-47.) Claimant was seen at a clinic for an initial visit on February 5, 2008, stating that he was depressed and not feeling well. He did not feel like doing anything, even making meals for himself. Bilateral lower extremities were swollen and red, "with very large varicose veins," for which surgery had been discussed with Claimant. (Tr. 250.)

B. Additional Medical Evidence Presented to the Appeals Council

On June 28, 2010, Claimant submitted to the Appeals Council a medications showing that he was taking Lovaza and Trilipix for cholesterol, Metmorfin for diabetes, Naspan for heart and cholesterol, Singulair and Loratidine for respiratory problems, Alprazolam for anxiety, Tektrum and Drovan for high blood pressure, and Hydrocodone and Aspirin for pain. (Tr. 303.) Claimant also submitted to the Appeals Council medical records further documenting his monthly follow-up and medication refill visits to the Steele Family Rural Health Clinic from June through September 2009, and a Medical Source Statement-Physical completed on January 11, 2010, by Patrick Drummond, a nurse practitioner at the clinic. These medical records indicate that Claimant continued to suffer from his chronic conditions, including joint pain and/or back pain and COPD, and received refill prescriptions for hydrocodone, Klonapan, and Lasix. The notes also indicate that Claimant had no sensory deficit, neurologically; and normal insight, judgment, and

memory, psychologically. (Tr. 308-18.)

Mr. Drummond indicated on the January 11, 2010 Medical Source Statement that from December 10, 2009 onward, Claimant had been unable to: lift and carry ten pounds even occasionally; stand or walk more than one to two hours in a day; or stand or walk continuously for a full hour.   Mr. Drummond further opined that Claimant could sit for a total of eight hours in a day; had limited ability to push/pull; could never climb, balance, stoop, kneel, crouch, bend, or reach, and could only occasionally handle, finger, feel, see, hear or speak.   Mr. Drummond also stated that due to his obesity and COPD Claimant had environmental restrictions requiring him to avoid dust and irritants in a working environment.   Finally, Mr. Drummond identified the onset of diabetes, a poorly healing ulcer on Claimant's right lower leg, chronic lower knee pain, anxiety, hypertension, high lipids, and other cardiovascular risk factors. (Tr. 304-05.)

As noted above, the Appeals Council summarily stated that the new evidence did not provide a basis for changing the ALJ's decision, and denied Claimant's request for review.

C. <u>Additional Medical Records Adduced after Remand from the District Court</u>

Records of McPherson Medical and Diagnostics from August 24, 2010, show that Claimant underwent testing for chronic airway obstruction, shortness of breath and dyspnea and received a diagnosis of mild obstructive disease of the peripheral airways. (Tr. 567.)   On April 26, 2011, further testing showed small amounts of scattered plaque in his leg and foot arteries, definite lower leg edema, venous stasis, venous enlargement and

multiple inflamed varicosities, but no narrowing or stenosis was found. (Tr. 564)   On

August 30, 2011, x-rays of Claimant's lumbar spine showed mild osteoarthritis. (Tr. 565.)

Claimant continued to receive treatment from the Steele Family Rural Health

Clinic. (Tr. 510-63.)   He was seen at the clinic on July 21, 2010, and every month

thereafter through June 2011.   On July 27, 2011, the differential diagnoses indicated were:

osteoarthritis tenia pedis, diabetes, COPD, hypertension and anxiety disorder. (Tr. 522)

On August 29, 2011, Dr. McKenzie diagnosed claudication in Claimant's left leg, COPD,

incontinence of stool, hypertension, anxiety disorder, tenia pedis and diabetes.   He

prescribed Lovaza, Lamisil, Glucophage, Lorcet and Xanax and referred Claimant for a

colonoscopy. (Tr. 517)   On October 12, 2011, Dr. McKenzie diagnosed hypertension,

COPD, incontinence of stool and anxiety and prescribed Xanax and Lorcet. (Tr. 513)

On January 10, 2012, Claimant presented to the Respiratory Care Department of

Pemiscot Memorial Hospital for testing and exhibited moderate ventilatory obstruction.

(Tr. 634-35.)

On January 18, 2012, Claimant saw Dr. Price Gholson, Psy.D, of The Counseling

Center.   At that time, Dr. Gholson completed a Family Support Division Medical Report

including a Physician's Certification/Disability Evaluation.   (Tr. 570.)   Dr. Gholson

diagnosed Depressive Disorder in Partial Remission and assessed a GAF of 65. (Tr. 571.)

Dr. Gholson noted that Claimant showed no evidence of hallucinations, paranoid

delusions, grandiose delusions, ideas of reference and illusions, but showed an above

average to high degree of compulsion, obsessive thoughts, phobia and depressive trends.

(Tr. 576.) Dr. Gholson characterized Claimant's intellectual functioning, affect and thought processes as average but found him low to below average in dress, clothing, facial expression, eye contact, quantity of here- and-now expression of emotion, mood, action to change and appropriateness of goal striving. (Id.) With respect to physical findings, Dr. Gholson noted a limp due to leg swelling and restricted thumb movement. (Tr. 575.)

On January 31, 2012, Claimant was transported by Emergency Medical Services to Pemiscot Memorial Hospital due to complaints of chest pain. (Tr. 580, 586.) A chest X-ray showed no significant abnormality. (Tr. 583.) On February 14, 2012, Claimant was seen at the Steele Family Rural Health Clinic and referred for testing. (Tr. 612.) Testing at McPherson Medical and Diagnostics on that date showed severe obstructive airways disease. (Tr. 598.) On March 14, 2012, Claimant presented to Pemiscot Primary Care Center requesting medication for his depression and nerves and received a diagnosis of major depressive disorder. (Tr. 713-714.)

At the time of his March 14, 2012 visit to the Steele Family Rural Health Clinic Claimant's medications were identified as Lovaza, Tekturna, Crestor, Diovan, Lorcet and Combivent. (Tr. 595.) On April 19, 2012, Claimant reported that his medications were Crestor, Letia, Onglyza, Xanax, Diovan, Tekturna, Tripix, Locor, Niaspan, Lasix, Glucophage, Lorcet, Claritin, Lamisil, Singulair and Aspirin. (Tr. 494-95.) The record also contains prescriptions for Claimant from Greene Pharmacy for the period november 6, 2007 through April 20, 2012. (Tr. 496-508.)

## IV. Evidentiary Hearings

A. The May 20, 2009 Hearing

Claimant testified that he was 39 years old, single, lived alone in an apartment, and had a high school education. He could read and write and do basic adding and subtracting. He testified about the various low-paying jobs he had held in past years, including his work in 1994 at a gas station convenience store stocking shelves, cleaning, and doing cashier work. Claimant stated that he could no longer work full time due to problems with his legs, shortness of breath. He also noted that he had dizziness, sleep apnea, COPD, congestive heart failure, and morbid obesity, with a current weight of 420 pounds. Claimant testified that he took medication for cholesterol and blood pressure, aspirin, Prozac, pain pills for his legs, and Ambien for sleep, and used a CPAP machine and nebulizers. He had difficulty sleeping because of cramping in his legs. He could stand for only about 20 to 30 minutes before needing to elevate his legs for about an hour to get to a point where he could stand again. His left leg was swollen all the time and he had discolorations in his legs and fingers. Sitting also aggravated his symptoms and swelling. He could walk only two blocks before experiencing shortness of breath. He did not do housekeeping, cooking, or cleaning. He received home health care seven days a week, two hours per day, and these workers performed the household chores. Claimant's daily activities consisted of sitting on the couch watching TV or listening to the radio with his feet propped up. He no longer hunted or went fishing. Claimant had cut back his smoking to two cigarettes in the morning. In spite of this, he still had trouble with his breathing. He had difficulty bending over to pick up objects, and could not consistently

bend, stoop, or crouch. His hands swelled, and the use of tools aggravated the problem. He has also experienced numbness in his right hand. Claimant's income consisted of food stamps. He had a Medicaid card, and his brothers and sisters paid his rent and utilities.

B. <u>May 17, 2012 Supplemental Hearing on Remand (Tr. 332-346)</u>

At the May 17, 2012 hearing Claimant testified in response to questions posed by the ALJ and counsel. Claimant testified that he was 42 years old, 6'4" with a current weight of 420 pounds, had a high school education, could read and write, count money and make change. Claimant further testified that he had not kept a checkbook for several years and that he was "not very sure with [his] money anymore and did not have a driver's license. Claimant also stated that he was single, had no children and lived alone in a HUD subsidized apartment where his monthly rent and utilities were approximately $133 dollars per month. He further stated that he received $200 month in food stamps and that family and friends helped him pay his rent, utilities and other expenses.

Claimant testified that had not worked since September 5, 2007, and that prior to that time he held various low paying jobs working as a cashier at a convenience store, in the deli department of a grocery store, and as a farmhand and laborer.

Claimant also testified that had recently filled his prescriptions for medication which cost him approximately $17 per month, took his medications regularly, and experienced no side effects.

Claimant stated that his vision and hearing were good, and that he could speak "pretty well," although he sometimes became "tongue-tied." (Tr. 337.) He also testified

that he could not walk very far or stand for very long, sometimes used a cane and was required to sit and sleep with his legs elevated. Claimant stated that he had COPD, diabetes, congestive heart failure, sleep apnea, morbid obesity, and severe edema in his left leg which caused his left leg to swell at times to double its size. In addition, he reported depression, recently exacerbated by his father's death; intermittent disorientation as to time; anxiety; seeing and hearing things "that's not actually there," (Tr. 338); and an inability to function well around groups of people. Claimant explained that he had received medication for depression, nerves and inability to sleep. Claimant further testified that his diabetes was presently controlled with medication and without insulin injections.

Claimant stated that that he could no longer work full time due to problems with his legs, shortness of breath, dizziness severe headache, sleep apnea, COPD, congestive heart failure, and morbid obesity. Claimant reported that although he could lift 10-15 lbs., he cannot lift and carry this weight for very long, and cannot run or jump. Claimant characterized his memory as formerly "good," but testified that lately he was forgetting things such as the day of the week and telephone numbers. He stated that he is able to follow directions in a work setting or from a road map. Claimant testified that he did not do housekeeping, cooking, or cleaning and was largely inactive the entire day. Although he rises early, at 5 a.m., and goes to bed between 8 and 10p.m., Claimant testified that he only sleeps intermittently through the night and frequently wakes, gasping for air. Claimant stated that he does not do household chores and has a housekeeper to mop, sweep

and carry out the trash.

Claimant testified that he is a social drinker, uses tobacco but no illegal drugs, has no allergies, and no criminal record or DWIs. Claimant also testified that although he had experimented with cocaine in 2007 he had rehabilitated [himself] since that time.

## V. The ALJ's Decisions

### A. The ALJ's Decision of July 15, 2009

The ALJ found that Claimant had the severe impairments of morbid obesity, cocaine abuse, hypertension, obstructive sleep apnea, COPD, peripheral venous insufficiency, depression, and anxiety, but that none of these impairments, singly or in combination, met or medically equaled the severity criteria of any of the deemed-disabling conditions listed in the Commissioner's regulations. The ALJ next found that Claimant had the RFC to perform light work as that term was defined in the Commissioner's regulations,[4] except for performing more than simple activity.[5] In support of this RFC

---

[4] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6, elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping; and that many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

[5] The ALJ articulated other "exceptions" -- namely lifting and carrying more than 20 pounds occasionally and ten pounds frequently, and standing or walking more than six hours in an eight-hour workday -- but these limitations are encompassed in the definition of "light work" set forth in the regulations.

assessment, the ALJ stated that Claimant's allegations about the intensity and limiting effects of his impairments were not credible, in light of Claimant's sporadic work history prior to his alleged onset of disability, Claimant's daily activities and ability to live and function independently, his abuse of illicit drugs during his alleged period of disability, his need for only "minimal or conservative" treatment, and the lack of strong prescription pain or respiratory medication.   The ALJ recognized that Claimant's obesity "exacerbate[d]" his other medical conditions and imposed "significant limitations with mobility and stamina," but also found that physical examinations revealed that Claimant had a normal gait and was able to ambulate independently.   In addition, the ALJ found no evidence of significant joint or spine abnormality, range of motion limitation, muscle atrophy or spasm, bladder or bowel dysfunction, neurological deficits, or end organ dysfunction.   Further, the ALJ also found that Claimant's hypertension, COPD, and lower extremity edema/venous insufficiency were all generally controlled on medication.   The ALJ observed that Claimant did not appear in any "obvious credible physical or mental discomfort" during the evidentiary hearing.

The ALJ gave "no weight" to Dr. Mozle's July 23, 2007 assessment that Claimant was permanently disabled, because the ALJ found the assessment was inconsistent with Dr. Mozle's own "essentially unremarkable" physical exam; with unspecified objective medical evidence of record; with the conservative medical treatment provided to Claimant; and with Claimant's daily activities.   The ALJ also noted that the ultimate determination of whether a claimant is disabled is a matter reserved to his judgment and not that of

treating or examining physicians.

The ALJ found that Claimant had the severe mental impairment of substance addiction disorder, consisting of "cocaine abuse with related depressive and anxiety disorders," but that these problems caused only mild limitations in activities of daily living and social functioning, and moderate limitations in maintaining concentration, persistence, or pace. Based on his RFC assessment, the ALJ found that Claimant could perform his past work as a service station cashier, which, according to the Dictionary of Occupational Titles ("DOT"), is an unskilled, light exertional level occupation. The ALJ concluded that Claimant was therefore not disabled, even considering his substance abuse, as of August 14, 2007, the date his application for SSI was filed.

B. The ALJ's June 4, 2012 Decision on Remand (Tr.   718-730)

After careful consideration of the entire record, the ALJ found that Claimant had not engaged in gainful activity since August 1, 2007. The ALJ further found that Claimant was not credible with respect to his allegations regarding the severity of his work-related limitations. In Step 2, he ALJ concluded that Claimant had the following severe impairments: chronic lower extremity edema, COPD, congestive heart failure, sleep apnea, and obesity. (Tr .724.)

At Step 2 , the ALJ also applied the special technique for evaluating mental impairments found at 20 C.F.R. pt. 416.920a and first determined that Claimant did not have the mental impairments that satisfy the criteria of Part A of the listing. (Tr. 725, 729.) The ALJ noted that although Claimant had received treatment for depression anxiety and

15

cocaine abuse, the majority of the time examiners observed no significant signs of psychiatric disorders. (Tr. 725.)   Moreover, he noted that on a couple of occasions, examiner s observed no significant signs of psychiatric disorder and found instead normal mood or affect.   In addition, the ALJ noted that on one or more occasions Claimant reported that he had no psychiatric problems. (Id.)

With respect to the Part B criteria for mental impairment, the ALJ found mild limitations of activities of daily living, no limitations of social functioning, and only mild limitations of concentration, persistence and pace. (Id.)   At least once an examiner identified no problems with respect to such activities and no examiner found perisitent problems with the activities of daily living. (Id.)   The ALJ found no limitation of social functioning despite Claimant's contrary testimony because neither the SSA forms Claimant completed nor the examiner's notes indicated such problems. The notes indicated instead that Claimant was cooperative and polite. (Id.)   The ALJ further noted that Claimant had not had in the past year any episodes of decompensation lasting two weeks or more. (Id.)

Finally, the ALJ determined that the record was devoid of evidence satisfying the criteria of Part C, such as repeated episodes of decompensation, or residual psychiatric issues that might be exacerbated by even a minimal increase in mental demands. (Id.)

With respect to the opinion of a treating psychiatrist, Dr. Ghoulson, who assigned Claimant a GAF of 60 in July, 2007, the ALJ found that this GAF indicated moderate to mild symptoms of mental impairment. (Tr .726.)   To the extent that this GAF might be

construed as a basis for a finding of severe mental impairment, the ALJ gave it little weight.   In so doing he observed that GAF scores are descriptive, not diagnostic and focus on a claimant's generalized ability to function at a particular point in time. (Id.)   For these reasons the ALJ concluded that the use of GAF scores for predictive purposes is unwise as they are highly variable, subjective and lacking in specificity.

The ALJ further noted that in January, 2012, Dr. Ghoulson assigned Claimant a GAF of 65 in January, 2012. (Id.)   The ALJ stated that this GAF score rating which corresponds with mild symptoms of mental impairment better reflects the full range of treatment records here, including those where Claimant denies psychiatric problems and examiners fail to observe significant signs of such disorders. (Tr. 725-726)

In the third step of the analysis, the ALJ explicitly considered the effect of Claimant's morbid obesity on the listings at issue. (Tr.     26.)   The ALJ found that even when obesity was taken into account, none of Claimant's impairments not met the degree of severity required under the listings.   Specifically, the ALJ determined that the evidence of record failed to show either the requisite laboratory findings or severity of signs and symptoms necessary to satisfy those listings.   (Id.)

The ALJ then found that Claimant did not have an impairment or combination of impairments listed in, or medically equivalent to, those contained in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 726.)   He then determined that Claimant has the RFC to lift and carry ten pounds occasionally and and less than ten pounds frequently. (Tr. 727.)   He further determined that Claimant can walk and stand for no more than two hours in an eight hour

day and can sit for six hours. (Id.)  Finally, the ALJ held that Claimant must avoid concentrated irritants. (Id.)

In reaching this RFC determination, the ALJ considered the impact of Claimant's symptoms but only to the extent that he found them credible.  The ALJ stated that he would give the Claimant "the benefit of the doubt" with respect to his claimed lifting and carrying limitations. (Id.)

The ALJ determined that Claimant retained the RFC to perform a "wide range of sedentary work, and must avoid concentrated exposure to respiratory irritants. (Id.)  With respect to the District Court's directive to consider, on remand, Claimant's ability to perform his past work as a service station cashier and his ability to do the lifting required in the job, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. 729.)

Noting that the burden shifted to him to show that significant numbers of jobs that Claimant can perform exist in the national economy.  (Tr.    728.)   The ALJ then considered Claimant's vocational factors and his RFC.   With respect to vocational factors, the ALJ characterized Claimant as a younger individual with a high school education and "at best, semi-skilled" past relevant work experience." (Tr.    728, 730.)   He further concluded that "transferability of skills" was not particularly relevant in light of Claimant's other vocational factors. (Tr.    730.)

Relying upon Rule 201.28 in Table No. 1 of the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ noted that these authorities suggest a finding of

"not disabled" when the RFC permits a full range of sedentary activity and the vocational

factors, such as Claimant's relatively young age and his level of education are considered,

even when non-transferability of skill is assumed. (Tr.    728.)    The ALJ further

concluded that Claimant's nonexertional limitations did not significantly restrict the

sedentary occupational base and that a sufficient number of jobs that Claimant could

perform exist in the national economy. (Tr.    729-30.)    Consequently, the ALJ concluded

that Claimant was not disabled within the meaning of the Act.

## VI.    Applicable Law

In a disability insurance benefits case, the burden is on the claimant to prove that he

or she has a disability.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001.)

Under the Social Security Act, a disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."    42 U.S.C. §§ 423(d)(1)(A) and

1382c(a)(3)(A).    A claimant will be found to have a disability "only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."    42

U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140

(1987).

The Commissioner has promulgated regulations outlining a five-step process to

guide an ALJ in determining whether an individual is disabled.   First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."   If she is, then she is not eligible for disability benefits.   20 C.F.R. § 404. 1520(b).   If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).   If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.   If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling.   If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d).   If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work.   If the claimant can still perform past work, she is not disabled.   20 C.F.R. § 404.1520(e).   If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy.   In step five, the ALJ must consider the claimant's "age, education, and past work experience."   Only if a claimant is found incapable of performing other work in the national economy will she be found disabled.   20 C.F.R. § 404.1520(f); *see also Yuckert,* 482 U.S. at 140-42 (explaining the five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will

be affirmed if they are supported by "substantial evidence on the record as a whole." *Pearsall*, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* A district court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court should affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above

is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." *Wiese*, 552 F.3d at 730 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Wiese*, 552 F.3d at 730 (internal quotation omitted). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. *Id.* The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001), or because it might have "come to a different conclusion." *Wiese*, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." *Wheeler v. Apfel*, 224 F.3d 891, 894-95 (8th Cir. 2000); *see also Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (holding that the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

## VII. Discussion

Claimant asserts that the ALJ's RFC assessment was flawed because (1) he improperly assessed Claimant's credibility, (2) it was not based on some medical evidence, (3) he disregarded the opinion of Claimant's treating nurse practitioner and (4) he minimized the effects of Claimant's obesity and mental impairments on his RFC.

A claimant's RFC is what he can do despite his limitations. *Dunahoo*, 241 F.3d at 1039. The claimant has the burden to establish his RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger,* 390 F.3d at 591; *see also* 20 C.F.R. § 404.1545(a).

A. Credibility

As part of his residual functional capacity finding, the ALJ considered the credibility of Claimant's complaints. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (stating that "[i]t is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations"). Claimant asserts, however, that the ALJ's credibility findings do not conform to the requirements of Eighth Circuit law. The Court is satisfied, however, that the ALJ's credibility findings are consistent with the standard for evaluating pain and other subjective complaints as set forth in the controlling Eight Circuit precedent, *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984); and the regulations at 20 C.F.R. § 416.929, and Social Security Ruling (SSR) 96-7p.

In *Polaski*, the Court of Appeals set forth factors that an ALJ must consider in evaluating a claimant's subjective complaints. In addition to objective medical evidence and the claimant's work record, an ALJ must consider any evidence relating to Claimant's

daily activities; the duration, frequency and intensity of any pain; the dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir.1984); *see also* 20 C.F.R. § 416.920. Moreover, if an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, the Court should defer to the ALJ's judgment. *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ properly considered Claimant's work history, the objective medical evidence, claimant's activities of daily living, medication usage, denial of psychiatric problems to his doctors, third party observations, medical and opinion evidence, and inconsistencies between his complaints and the evidence contained in the record as a whole. In so doing, he determined that Claimant's complaints were not entirely credible. (Tr. 719-27.)

First, the ALJ noted that the most Claimant had ever earned was a little over $6,500 and that he had sparse work history. (Tr. 97, 720.) Under Eighth Circuit law, low earnings and a minimal work history render an assertion of disability less credible. *See Pearsall*, 274 F.3d 1211, 1218 (8th Cir. 2001) (noting that "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability"); *see also Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)(noting that the claimant's prior work history, characterized by fairly low earnings and significant breaks in employment cast doubt on his credibility).

Claimant asserts that nothing in the objective evidence contradicts his testimony that his physical activity is limited as a result of his morbid obesity. Despite Claimant's complaints that he had a limited ability to sit, the ALJ noted that the evidence revealed that Claimant could sit for up to six hours in an eight-hour workday (Tr. 34-35, 727.) Mr. Drummond, Claimant's nurse practitioner, found that Claimant could sit for eight hours a day (Tr. 304) and none of Claimant's doctors found that he had significant problems with sitting throughout the day. (Tr. 727.) Similarly, although Claimant asserted that he could not stand and walk for long periods due to shortness of breath and leg swelling, the ALJ noted that on many physical examinations Claimant's doctors found his lungs were clear (Tr. 31, 35, 185-86, 293, 298, 300, 308, 310, 312, 314, 511-12, 515-16, 521, 525-26, 529-30, 533-34, 538, 541, 544, 547, 550, 553, 556, 559, 562, 594, 611, 723.) In addition, the ALJ noted that a Social Security interviewer found that Claimant had no particular problems with breathing. (Tr. 102, 720.) Moreover, Claimant continued to smoke despite his complaints of shortness of breath and COPD. This behavior militates against a finding of disability (Tr. 182, 297, 519, 575, 592.) *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (concluding that an ALJ may properly consider a claimant's failure to quit smoking); *see also Wheeler v*, 224 F.3d at 895; *Sias v. of Secretary Health and Human Serv.s*, 861 F.2d 475,479 (6th Cir. 1988) (per curiam) (stating that "[a]lthough [the claimant ] suffers from chronic obstructive pulmonary disease, his heavy smoking habit indicates that the condition is not disabling").

The ALJ further noted that, on many occasions Claimant's doctors found his gait normal. (Tr. 261, 263, 267, 269, 275, 277, 283, 293, 298, 312, 314, 512, 516, 520, 526, 530, 534, 538, 541, 544, 547, 559, 562, 595, 611, 723.)   Similarly, on some examinations, Claimant's doctors found that he had 5/5 strength in his extremities. (Tr. 186, 191, 257, 269, 271, 310, 559, 562, 727.)   And, while some examinations revealed that Claimant had edema, at other times there was no evidence of edema. (Tr. 186, 511-12, 516, 520-21, 525, 529-30, 533, 537-38, 541, 544, 547, 594-95, 610-11, 727.)   An ALJ may properly question the credibility of a claimant's allegations when the medical evidence does not consistently substantially support those allegations.   *See Rigginsv. Apfel*, 177 F.3d 689, 692-93 (8th Cir. 1999).

The ALJ further found that Claimant's daily activities were not totally consistent with his allegations of work-related limitations. (Tr. 720.)   Claimant reported that he had no difficulty dressing, prepared simple meals, swept, mopped, walked, paid bills, handled a savings account, read, did crossword puzzles, and talked with friends. (Tr. 124-28, 720.) Moreover, his doctor noted that he could perform his activities of daily living without assistance. (Tr. 185.)   Claimant asserts that his activities were consistent with his testimony regarding work limitations and correctly notes that evidence of the ability to perform of general housework does not constitute an ability to work.   **CASE**

Nonetheless, Claimant's activities reveal that he is not as limited as he alleges, and as noted by the ALJ, such inconsistency calls his credibility into question (Tr. 720.)   *See Riggins*, 177 F.3d at 692 (noting that inconsistencies between a claimant's subjective

complaints and his daily activities diminish his credibility, and may be relied upon by the ALJ); *see also. Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (stating that inconsistencies in the record, including a claimant's activities, reflect negatively on claimant's credibility).

In addition, the ALJ identified other inconsistencies between Claimant's statements and evidence contained in the record. (Tr. 723.)   Claimant reported that he could not walk or stand for long due to leg swelling and shortness of breath, but his examiners regularly observed that he had a normal gait, without edema, and his lungs were clear. (Tr. 31, 33, 35, 185-86, 261, 263, 267, 269, 275, 277, 283, 293, 298, 300, 308, 310, 312, 314, 511-12, 515-16, 520-21, 525-26, 529-30, 533-34, 537-38, 541, 544, 547, 550, 553, 556, 559, 562, 594-95, 610-11, 723.)   As noted above, Claimant continued to smoke despite his complaints of shortness of breath (Tr. 182, 297, 514, 575, 592.)   Moreover, although Claimant anxiety and depression, only rarely did examiners observe that Claimant had significant signs of a psychiatric disorder. (Tr. 187, 310, 312, 511-12, 516, 520-21, 525-26, 529-30, 533-34, 537, 550, 553, 559, 562, 595, 611, 723.)   Where, as here, inconsistencies are apparent in the record, an ALJ may properly discount subjective complaints of disability. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (stating that "[s]ubjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony"); *see also Eichelberger*, 390 F.3d at 589.

Having considered the various factors relating to a finding of credibility or the lack thereof, the Court is satisfied that the ALJ articulated specific and appropriate bases for his

credibility determinations, (Tr. 719-28), citing substantial evidence from the record as a whole.   The Court therefore concludes that the ALJ's credibility determination should be upheld.   *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) (holding that the reviewing court will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's subjective complaints).

B. "Some" Medical Evidence

As part of his RFC finding, the ALJ also considered the medical and opinion evidence.   Claimant asserts that the ALJ erred by finding that he could perform a full range of sedentary work.   He notes that Dr. Mozle, a consultative examiner, found that he was disabled.

The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace.   *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).   An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.   *Id.*

On July 17, 2007, Dr. Mozle, certified to the Family Support Division that Claimant was disabled (Tr. 223-24.)   Nevertheless, the ALJ found this opinion was not entitled to weight, as it was not an opinion regarding Claimant's limitations but only regarding the ultimate issue of disability (Tr. 223-24, 728.)   *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (stating that "[a] treating physician's opinion that a claimant is disabled or

cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination"). Moreover, the ALJ noted that Dr. Mozle did not provide a proper basis for his opinion and that no examination or testing supported it. (Tr. 223-24, 728.) A physician's statement that is unsupported by objective findings is not entitled to significant weight. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (holding that unless a physician's statement is supported by diagnoses based upon objective evidence, it will not support a finding of disability (citation and quotations omitted).

Claimant also asserts that records from the Steele Family Clinic support his allegations of disabling limitations. However, contrary, despite Claimant's complaints, no medical practitioner found that Claimant had significant problems with sitting throughout the day. (Tr. 304, 727.) In addition, although Claimant asserted that he could not stand and walk for long periods due to shortness of breath and edema in his leg, on many examinations Claimant's doctors at the Steele Family Rural Health Clinic found his lungs clear, his gait normal, and his leg without edema. (Tr. 185-86, 261, 263, 267, 269, 275, 277, 283, 293, 298, 300, 308, 310, 312, 314, 511-12, 515-16, 520-21, 525-26, 529-30, 533-34, 537-38, 541, 544, 547, 550, 553, 556, 559, 562, 594-95, 610-11, 723.) In addition, on some examinations, Claimant's doctors found he had 5/5 strength in his extremities (Tr. 186, 191, 257, 269, 271, 310, 559, 562, 727.) Finally, on numerous occasions, Claimant's doctors reported that they did not observe significant signs of

psychiatric symptoms. (Tr. 187, 310, 312, 511-12, 516, 520-21, 525-26, 529-30, 533-34, 537, 550, 553, 559, 562, 595, 611, 723, 725.)

On the basis of this evidence, the Court concludes that there is substantial evidence to support the ALJ's finding that Claimant could perform a full range of sedentary work.

C. <u>The Nurse Practitioner's Opinion</u>

Claimant asserts that the ALJ improperly disregarded the opinion of his nurse practitioner, Mr. Drummond.   The Court notes, however, that under the SSA regulations, nurse practitioners are deemed sources of "other " opinion evidence but are not deemed proper sources of medical opinion evidence. *See* 20 C.F.R. §§ 404.1513 and 416.913. Therefore, a nurse practitioner's opinion is not entitled to the same weight as a treatin source medical opinion.   *See Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (stating that"[b]y definition then, the controlling weight afforded to a 'treating source medical opinion' is reserved for the medical opinions of the claimant's own *physician, psychologist, and other acceptable medical source*") (emphasis added).

Claimant further asserts that the ALJ should not have discounted Mr. Drummond's opinion that Claimant could never lift 10 pounds when Claimant said he could lift 10 to 15 pounds, as Claimant was only talking about one instance and not part of a regular work day.   However, the Court notes that although in one instance Claimant indicates that he can lift more than 10 to 15 pounds, Mr. Drummond opines that Claimant cannot lift even 10 pounds on an occasional basis (Tr. 129, 304.)   For this reason, the Court concludes that

Mr. Drummond's opinions regarding Claimant's limitations are inconsistent with the medical evidence and Claimant's own statements regarding his limitations.

Just as an ALJ may discount a treating physician's opinion based in part on Claimant's own testimony, an ALJ may discount a nurse practitioner's opinion on the basis of such testimony. *See Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (noting that a physician's conclusory statements that a claimant "cannot sit for a long period of time without getting up to move around," and that "it [would be] almost impossible for him to hold a full time job," were contradicted by the claimant's testimony at the administrative hearing that he was currently employed as a school bus driver).

The ALJ also noted other problems with Mr. Drummond's opinion. (Tr. 728.)  Mr. Drummond indicated that Claimant could never balance or stoop, but no examination or objective evidence revealed that Claimant had a condition that completely precluded him from balancing and stooping. (Tr. 728.)  Claimant asserts that because he is obese, he has difficulty balancing and stooping, but there is no evidence in the record to support a determination that Claimant could never perform these functions.  In fact, Claimant balances when he stands and walks and his doctors frequently advised that his gait was normal, which indicates that he is not particularly limited in this function and not totally precluded from stooping, as reported by Mr. Drummond. (Tr. 261, 263, 267, 269, 275, 277, 283, 293, 298, 305, 312, 314, 512, 516, 520, 526, 530, 534, 538, 541, 544, 547, 559, 562, 595, 611, 723.)  These inconsistencies undermine Mr. Drummond's opinion because a

justified finding of inconsistency with other evidence is sufficient, without more, to

discount a medical opinion. *See Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005).

In addition, the ALJ noted that Mr. Drummond's opinion that Claimant could never

reach, was inconsistent with Claimant's activities of daily living which required reaching,

including his ability to dress himself, shave, and shop, (Tr. 125, 127, 728.), and with his

statement in his Function Report that he did not have any difficulty reaching. (Tr. 129.)

Claimant asserts that because he can perform these activities a few times per day

does not mean he can perform reaching in a regular work setting.   Nevertheless, the fact

that Claimant is able to reach in the course of his daily activities is both sound evidence and

inconsistent with Mr. Drummond's opinion that he would be completely unable to reach in

a work setting. (Tr. 125, 127, 305, 728.)   *See Tellez v. Barnhart,* 403 F.3d 953, 956 (8th

Cir. 2005) (noting that "the reports of [a claimant's] actual behavior in the workplace were

clearly at odds with the extreme limitations described by her psychiatrist and nurse

practitioner"); *see also* SSR 96-2p (stating that "[s]ometimes, there will be an obvious

inconsistency between the opinion and the other substantial evidence; for example, when a

treating source's report contains an opinion that the individual is significantly limited in the

ability to do work-related activities, but the opinion is inconsistent with the statements of

the individual's spouse about the individual's actual activities").

For these reasons, the Court concludes that the ALJ properly found that Mr.

Drummond's opinion is not entitled to significant weight as he is not an acceptable source

of medical information and because his opinion is inconsistent with other evidence of

record (Tr. 728.)   *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (stating that in determining what weight to give "other medical evidence," the ALJ has more discretion and is permitted to consider any inconsistencies found within the record); *see also Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (holding that an ALJ is warranted in discrediting an opinion that is inconsistent with, or contradicted by, other evidence in the record).

D. Proper Consideration of the Effects of Obesity

Claimant asserts that the ALJ failed to properly consider the effect of his obesity on his other impairments. The Court does not agree.

An ALJ sufficiently considers a claimant's obesity where he specifically refers to that condition in his decision. *See Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009); *see also Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004). Here, the ALJ noted that due to Claimant's obesity as well as his lung disease, he was limited to standing for no more than two hours in an eight-hour workday and must avoid concentrated exposure to respiratory irritants. (Tr. 727.) Moreover, the ALJ expressly noted that he took into account the effects of Claimant's obesity when considering whether Claimant's impairments met or equaled the requirements of any listed impairment at 20 C.F.R. pt. 404, subpt. P, app. 1, and when determining Claimant's RFC. (Tr. 726-27.) Therefore, the ALJ's decision reveals that he properly considered Claimant's obesity and its effects on his other impairments.

### E. Proper Consideration of the Effects of Mental Impairment

The ALJ noted that although Claimant received some treatment for depression and anxiety, at the majority of his visits, doctors observed no significant signs of a psychiatric disorder. (Tr. 187, 310, 312, 511-12, 516, 520-21, 525-26, 529-30, 533-34, 537, 550, 553, 559, 562, 595, 611, 725.) In fact, on a number of occasions, Claimant himself reported that he had no psychiatric symptoms. (Tr. 541, 544, 547, 594, 725.) And, as noted by the

ALJ, a Social Security interviewer found that Claimant had no particular problems reading, understanding, concentrating, talking, and answering. (Tr. 102, 720.)

The Eighth Circuit has noted that the absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in a claimant's mental capabilities disfavors a finding of disability. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (citing *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)). In addition, to the extent that a claimant's symptoms of depression and anxiety are controlled by medication, they are not considered disabling. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (*quoting Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (stating that "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling"). In this case the record is devoid of both these types of evidence and does not support a finding of disability arising from Claimant's alleged mental impairments.

## VIII.  Conclusion

The ALJ properly considered the evidence contained in the record as a whole, including Claimant's postural and environmental limitations and his limitations with respect to standing, walking, sitting, using his hands. In addition, the ALJ properly concluded that that Claimant could perform the full range of sedentary work activity. (Tr. 19-27.) The Court is satisfied substantial evidence on the record supports each of these determinations by the ALJ.

Inasmuch as the ALJ's RFC finding was within the "zone of choice" supported by substantial evidence it should be upheld. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th

Cir. 2007) (stating that where "there is conflicting evidence on the record, the ALJ's determination . . . does not lie outside the available zone of choice"). "'An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although Claimant articulates a rationale for reaching a different conclusion, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying SSI payments be **AFFIRMED**. A separate judgment shall accompany this Memorandum and Order.

/s/ *Terry I. Adelman*
TERRY I. ADELMAN
UNITED STATES MAGISTRATE JUDGE

Dated this ___11th___ day of December, 2014.